# Wright's Estate.

*Wills—Construction—Codicils—Contingent remainder—Nature of codicil and later will.*

A later will works essentially a revocation, while a codicil is a confirmation of the will, except as to the express alterations which it may contain. Notwithstanding a codicil, the provisions of the

will are to stand, unless in order to effect the purposes of the codicil, it is absolutely necessary that the provisions of the will shall give way.

Where a provision of a will contains a bequest to religious and benevolent institutions of a contingent remainder in the principal of a trust fund created by the will, and thereafter the testator executes a complicated series of eleven codicils, and in a number of the codicils he deals with, modifies and changes certain of the provisions relating to the trust fund created by the will, the court will not strike down the contingent remainders to the charities, where there is nothing in the codicils to indicate directly, or by clear implication, that it was the intention of the testator to revoke such contingent bequests.

Argued Oct. 12, 1916. Appeal, No. 99, Oct. T., 1916, by Franklin Home for the Reformation of Inebriates, formerly called the Franklin Reformatory Home, from decree of C. C. Philadelphia Co., Oct. T., 1890, No. 182, dismissing exceptions to adjudication in Estate of Robert J. Wright, deceased. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART and WILLIAMS, JJ. Reversed.

Exceptions to adjudication.

From the record it appeared that by the ninth paragraph of testator's will he set apart the sum of $150,000 in trust in equal shares for five persons for life, with remainder as to each one-fifth, in default of issue of the life tenant, to thirty-three specified charities, one of which is appellant. Louise Wernle Wright, formerly Louise Wernle, one of the five life tenants, died without leaving issue. An account was filed and the charities, including appellant, each claimed one thirty-third of that one-fifth share. The residuary legatees claimed that by certain of the codicils to the will, the gift to the charities was revoked, and that that one-fifth share fell into the residue. The auditing judge so found. Exceptions filed by the charities were dismissed by "a majority of the court," and the fund decreed to be held by the trustee for the residuary legatees.

The will and codicils were as follows:

## WILL OF TESTATOR.

June 28, 1886.

I, Robert Joseph Wright, of Bustleton, of Philadelphia, being of sound disposing mind and memory, do make this my last Will and Testament.

1. I constitute and appoint the Provident Life and Trust Company of Philadelphia, to be my executorys and trustees and to have entire charge of all my property and things immediately upon and after my decease.

2. My debts and funeral expenses are to be paid promptly.

3. Louise Wernle's room furniture, piano and a large number of the books in my bookcases, having been given to her several years ago, besides other things I have in charge of hers, are to be surrendered to her promptly, without trouble or expense.

4. My trustees are to set aside for her one thousand dollars as a marriage portion, to be paid to her immediately upon her marriage, but to be invested, and the income thereof to be paid to her semiannually until married.

5. If any bills remain unpaid for furniture for Mary R. Shaw, now the wife of A. C. Heritage, or for the stable that I am now building at Jenkintown, they are to be paid and the stable completed on my plan immediately, and the lot, together with the dwelling and stable are to been rented to said Mary R. Shaw Heritage, or issue, or their legal representatives, at the rent of four hundred dollars per year, on condition of keeping it in repair, and so long as either of them live and so choose.

6. I give to Caroline M. Quick and Emma K. Green and Jessie M. Cook and George D. Stewart, each eighty dollars a year, but neither of them shall claim under this bequest without executing a release from all other claims against me, nor who has sufficient income to live upon

without this annuity. This annuity is for themselves only during their lives, and then ceases at each one's death respectively.

7. I direct that forty thousand dollars be put in trust for Frances E. Koons and thirty thousand dollars put in trust for Louisa Livensetter; the net income thereof to be paid semiannually, to be paid to each of those ladies respectively during their lives; and after the decease of each one respectively, the principal thus set apart shall be paid and divided absolutely and equally among the several religious and benevolent institutions hereinafter named or intended to be so.

8. I direct to be paid promptly, after my decease, three thousand dollars to each, namely: to my sister and her son, and to each of her two daughters, absolutely.

9. I direct that one hundred and fifty thousand dollars be held in trust as follows: For the equal benefit of niece Josephine W. Rulon, niece Mary L. Koons, nephew Robert J. W. Koons, and friend Mary R. Shaw Heritage, and friend Louise Wernle, whom I have long had the care of, and for their issue as follows: One-fifth of the net income thereof shall be paid quarterly to each of these five persons during each one of their lives respectively, and issue shall take the share of its deceased parent; but in case of any of the above dying without leaving issue, or without issue living to obtain the age of twenty-one years, then such a one's full one-fifth of the principal shall be paid over absolutely and divided equally among the several religious and benevolent institutions hereinafter named or intended so to be; but when either of said five has died, and all of his or her said issue living has reached full twenty-one years of age, then the entire one-fifth of the principal which was set apart for such a one, shall be paid over to, or for, such issue or their representatives, absolutely and free from all trusts whatever. The Jenkintown property above-mentioned, bought of M. L. Kohler, and stable building by me, shall be held in this trust and estimated at six thousand five hundred dollars,

so long as M. R. Shaw Heritage, or issue, or representatives thereof, choose to keep it in repair and rent it on terms above-mentioned.

10. This will is to give and devise and dispose of everything that I possess when I die, real and personal; but the real estate, Fifth and Allegheny, and Sixth and Westmoreland streets, may be sold only after one year's full, frequent and public advertisement. All my real estate is to be sold in due time. I release my nephew from a renewed note of six thousand dollars, on condition that he, pays all the rest due by him or his firm to me.

11. I give and bequeath all the rest, residue and remainder of my estate, not fully bequeathed above, to, and to be equally divided among the following institutions, or to my trustees for the benefit of either of them which cannot act, if any: The American Sunday School Union, of Philad.; The Pennsylvania Bible Society, of Philad.; The American Tract Society, New York; The American Peace Society, No. 1, Somerset street, Boston; the National Temperance Society, 58 Reade street, New York; The Transit and Building Fund Society of Bishop William Taylor's self-supporting missions, New York; The Philadelphia Conference of the Methodist Episcopal Church; The American Christian Convention, or to its trustees—Hon. David Clark, of Hartford, Conn., president—one-fourth of its share it is to expend for the New Jersey Christian Conference, and one-fourth for The Colored Christian Institute, Franklinton, N. C., one-fourth for the Christian Biblical Institute, Stanfordville, New York, and the other fourth for the convention's own purposes; The Union Temporary Home, of Philad.; the Children's Hospital, of Philad.; The Pennsylvania Training School for Feeble Minded Children, near Philad.; The Pennsylvania Society to Protect Children from Cruelty, of Philad.; The Sheltering Arms of the Protestant Episcopal Church, of Philad.; The Friends' Home for Children, 4011 Aspen street, W. Philad.; The Philadelphia Home for Infants; The

Western Home for Poor Children, of Philad.; St. Christopher's Hospital for Children, of Philad.; the Children's Homœopathic Hospital, of Philad.; The Foster Home Association, of Philadelphia; The Bethesda Children's Christian Home, near Chestnut Hill, Pa.; The Southern Home for Destitute Children, of Philad.; Home Missionary Society, of Philad.; The Rosine Association, of Philad.; The Woman's Homœopathic Association of Pennsylvania, for its hospital in Philad.; The Seamen's Friend Society, of Philad.; The Philadelphia Home for Incurables; The Ladies' United Aid Society of the Methodist Episcopal Church in the City of Philad.; The Bedford Street Mission, of Philad.; The Franklin Reformatory Home, of Philad.; The Home for Aged and Infirm Colored Persons, of Philad.; The Presbyterian Hospital, in Philadelphia, for the Children's Ward; The Pennsylvania Industrial Home for Blind Women, of Philad.

Executed as the will of the subscriber, his last will and testament, this 28th day of June, anno domini eighteen hundred and eighty-six.

Duplicate copies executed, but only one of which is to stand.

### FIRST CODICIL.

January 20, 1888.

The following is a codicil:

1. As soon as the totals given to the various charities, constituted residuary legatees in will June twenty-eighth, eighteen hundred and eighty-six, shall sum up the total of one thousand dollars to each of said institutions entitled then to an equal share, then no more shall be paid to those institutions, unless as hereinafter mentioned: But I hereby direct my executor and trustee to set apart and constitute a trust as residuary legatee for everything not otherwise provided for, nevertheless in trust for the benefit of my sister Frances E. Koons and her issue, to pay one-half of the income thereof to said

Frances E. Koons semiannually, and to pay one-sixth of the income thereof semiannually to each of her three children, issue in each case taking deceased parent's share. And after the death of Frances E. Koons, her share of the income is to be divided between her three children or their issue in the same way. And I entail the property, one-third to each of her children, as long as the law will allow, issue in all cases taking deceased parent's share, and when no issue surviving to full age then to go to the brother and sister or two sisters, or surviving one, or issue thereof, issue in all cases taking deceased parent's share: And so the interest is to be paid until finally the legal time comes to divide the principal, which is to be divided in the same proportions that the income would be, between the survivors, that, is, Frances E. Koons' grandchildren or their issue if any; but in case Frances E. Koons and her three children and all her and their issue shall have deceased before coming entitled to this property and before the legal time for the entail has closed, then the property now spoken of, is to be paid to the various charitable institutions as mentioned and provided for them in will of June twenty-eighth, eighteen hundred and eighty-six. But in case all the children of Frances E. Koons and all the issue thereof shall have deceased before her decease, then she shall inherit all the income during her life, and after that the principal shall be paid to the charities as above mentioned. The above-mentioned children of Frances E. Koons are: Josephine W. Rulon, Mary L. Koons, and Robert J. W. Koons.

2. I authorize my executors to sell my real estate without the purchaser being bound to see to the application of the purchase-money and free and discharged from all trusts.

3. Bequests to women are to be without any liability for their debts or to be anticipated or assigned by them or. to be subject to the control of any husband any of them may have, so far as I can legally ordain so.

4. I direct that for every forty dollars per annum of annuity a principal of twelve hundred and fifty dollars and no more shall be set aside to secure it, so that if that is not sufficient the annuity must be reduced proportionally.

5. If anything in my will or in this codicil is illegal I hereby revoke it.

6. In item sixth of my will I now direct that the judgment of my executor shall be sufficient as to who has or has not sufficient income to live upon without the annuity therein provided.

7. I direct my executors to set apart an additional sum of ten thousand dollars in trust for Louise Wernle, in trust to pay her the income thereof during her life; but if she should marry to pay to her at any time thereafter either at once or in portions as she shall request, four thousand dollars out of the principal of this trust; and to pay the income of the balance during her life; and after her death to pay the said income to her children equally, the issue of any deceased child taking the deceased parent's share in all cases. And when the legal limit is attained to divide the principal then to divide it among her surviving grandchildren or pay to the survivor, if any grandchild survives issue in all cases taking deceased parent's share.

8. I bequeath to the Bustleton Methodist Episcopal church, one thousand dollars, and to the Pennsylvania Branch of the American Peace Society, with which J. C. Strawbridge and John B. Wood are connected, one thousand dollars, and to the National Vegetarian Society, of which Henry S. Clubb is president, one thousand dollars. These are special bequests. Memorandums, page one, line seven, interline "then." Page three, line one, "sell" written on an erasure and "real" interlined. Line eighteen, erase "or in any other" and "or shall be" page four, note. Three lines are written above the ruling, page four, line ten, interline "then to divide it" and "or

pay to the survivor, if any grandchild survive." Page one, line one, erase "another."

Executed in duplicates as a codicil of the will of R. J. Wright, Bustleton, January twentieth, A. D. eighteen hundred and eighty-eight, Philadelphia.

### SECOND CODICIL.

January 21, 1888.

The following is another codicil:

1. I revoke the words in Article VI of my will which say: "But neither of them shall claim under this bequest without executing a release from all other claims against me, nor who has sufficient income to live upon without this annuity." And I also revoke the whole of Item 6 of the codicil made the 20th instant, which relates to the same subject.

2. I add six thousand dollars to the trust for Louise Wernle in Item 7 of codicil twentieth instant, and together making sixteen thousand dollars in that trust; and on the following additional trusts, namely: And in trust after her marriage, to purchase a house and lot for her residence, as a part of said trust, if she desires it, and if she and the executors can agree upon a price and property to be purchased, and providing that the property does not cost exceeding eight thousand dollars clear, and which would leave four thousand dollars or more to use for the taxes, insurance and repairs and the necessary expenses of the property; of which the income only is to be used ordinarily, but of which the principal may be taken to pay extraordinary expenses when necessary or really expedient, according to the judgment of the executor and trustee.

3. I authorize my executor and trustee to invest and reinvest in securities other than those prescribed by law, according to their own judgment and discretion, exercised in good faith, for the benefit of my estate.

4. My will and codicils are each executed in duplicate,

so that, of course, only one of each kind or pair is to be taken.

Executed at Bustleton, Philadelphia, Pa., January twenty-first, eighteen hundred and eighty-eight (A. D.).

(Signed) ROBERT J. WRIGHT.

Witnesses in the presence of R. J. Wright and of each other:

(Signed) JOSEPH B. HERITAGE

(Signed) THOMAS TUMATH.

### THIRD CODICIL.

March 1, 1889.

The following is another codicil:

I hereby direct my executors to advertise my real estate on Fifth and Sixth streets, near Allegheny avenue and Westmoreland street, at least once a week in two papers for six months before the sale. I also hereby authorize my executors to sell my real estate without liability of the purchaser or purchasers to look to the application of the purchase-money.

Executed at Bustleton, this day, March first, one thousand eight hundred and eighty-nine, in Philadelphia, and in duplicate.

### FOURTH CODICIL.

June 25, 1889.

The following is another codicil:

Whereas in my will of 28th of June, 1886, I bequeathed and directed forty thousand dollars to be put in trust for my sister, Frances E. Koons, the net income of which was to be paid to her during her life, but the principal of which was directed to be paid to various benevolent and religious institutions after her death; I now direct that instead of the sum above named the sum of thirty thousand dollars shall be held in trust, to pay her the net income semiannually during her life; but after her

decease the net income thereof shall be divided equally between her three children (now being among my adopted children), and after the decease of either of those three, each one's share shall go to the deceased person's issue, if any; but if either of them die without issue, or no issue thereof survive to full age, then each one's share so dying shall be divided between the two survivors; or if two should die without leaving issue attaining to full age, then the shares of both of them shall go to the third child of Frances E. Koons, issue in all cases taking deceased parent's share.  This applies to the income, as long as there are any minor children or issue remaining of either of them; and it also applies to the division of the principal after the minor children yet surviving have all attained full age (issue in all cases taking deceased parents' share).  And furthermore, I direct that the various sums of money directed in Article IX of the aforesaid Will to be held in trust for the equal benefit of niece Josephine W. Rulon, niece Mary L. Koons, and nephew Robert J. W. Koons, and for their issue, shall be divided, both income and principal, in the same manner and on the same principles as are herein above directed for the disposal of the aforesaid trust for Frances E. Koons after her decease.  And furthermore, all the reversionary rights given to institutions in the aforesaid Will, reversionary rights to things in sums therein bequeathed to or in trust for Frances E. Koons, or her issue, are hereby revoked, as it is my intention that as long as there is any issue surviving of Frances E. Koons, or her offspring, everything that I bequeath in the Will of June 28, 1886, and in this codicil to her or them shall go no otherwise than to her issue so long as the law will allow. Accordingly, where I directed in Article VIII in my Will the sum of three thousand dollars to be paid to each, namely, to my sister (Frances E. Koons) and her son, and to each of her two daughters absolutely, I now direct, in case of the decease of any or either of said four persons previous to the settlement of those sums, I direct

that said three thousand dollars shall be paid to and divided among the survivors of said four persons.

I hereby alter Article IX of my Will, and now direct that Mary R. Shaw Heritage, and her issue, shall have an interest only of two-fifteenths in the trust constituted in said Article IX of my Will; and I also direct that my sister, Frances E. Koons, and her issue, shall have an interest of one-fifteenth in said trust. But the interests of all the other parties constituted by the trust in Article IX of my Will are to remain unchanged by this clause, as this clause only affects Mary R. Shaw Heritage and Frances E. Koons and their respective issue. I hereby alter codicil of January 20, 1888, as follows: I direct when the amount paid to each of the various religious and benevolent institutions (mentioned in codicil January 20, 1888, or referred to there, or mentioned in will of June 28, 1886) shall amount to eight hundred dollars each, then no more shall be paid to them, but the residuary estate not otherwise bequeathed or divided shall then be held in trust for or paid to Frances E. Koons and her issue, as provided in codicil of January 20, 1888: Provided however, that this limitation shall not apply to legacies coming to institutions after the decease of legatees, or their issues, other than Frances E. Koons and her issue, and when it is specially provided that in case of death of said legatees (other than Frances E. Koons or her issue) their share shall then go to religious or benevolent institutions. Page 1, line 18, "those three" written on erasure; P. 2, line 2, interline "or issue"; P. 2, line 25, interline in the Will of June 28, 1886, and in this codicil; P. 3, line 5, interline "of any or either of said four persons"; P. 3, line 8, interline "the survivors of"; P. 3, line 12, add "only"; P. 3, line 22, interline "alter"; P. 4, 1. 1, interline "not otherwise bequeathed or devised." Executed in duplicate as a codicil to the Will or Robert J. Wright, Bustleton, Phila., Pa., June 25th, Anno Domini (1889) eighteen hundred and eighty-nine.

Sept. 4, 1889.

I, Robert J. Wright, Bustleton, Phila., ordain and make the following codicil:

Item First.—I hereby direct that only five hundred dollars each shall be given to each of the various religious, benevolent and charitable institutions made legatees of larger amounts in my Will and Codicils; except that the legacy to the Bustleton Methodist Episcopal church, of Bustleton, Phila., shall be one thousand dollars, and I bequeath to St. Luke's Protestant Episcopal church, of Bustleton, Phila., five hundred dollars.

Item Second.—I direct that all bequests or devises to or in trust for my sister Frances E. Koons, or to or for her offspring or issue, or either of them, shall be due and payable free and clear from the five per cent. collateral inheritance tax; so also shall all legacies, bequests or devises to or in trust for Louise Wernle (now Louise Wernle Wright) and for Mary R. Heritage; or for either or all the persons named in this item second, shall be due and payable free and discharged from the five per cent. collateral inheritance tax. But this exemption from tax is not to be held applicable to the legacies to or for the churches or benevolent and charitable institutions, nor to any other person mentioned in my Will or any Codicil of mine.

Item Third.—Nevertheless I direct that all collateral inheritance tax shall be paid in time to avoid all legal penalties for delay or nonpayment of tax; also I hereby make that request to the court.

Item Fourth.—Instead of any former small legacy to or in trust for Emma K. Green, wife of Pennington Green, I hereby bequeath to my executors three thousand dollars in trust for said E. K. Green during life, to invest the same and pay her the net annual income thereof in quarterly portions, free and discharged, as far as the law will allow, from all claims of any creditors or hus-

band she may at any time have. This legacy is also in lieu of and instead of any and all claims whatsoever that she or her representatives in her right may, might or could have against my estate whether by Will or any other Codicil, or otherwise whatever.

Item Fifth.—All payments to women, whether of income or of principal, shall be (as far as the law will allow) free and discharged from all claims from any creditor or husband they may at any time have; and shall be paid only on receipts, orders, power of attorney or other voucher made or issued not longer than three months before the payment thereof becomes due.

Item Sixth.—I direct that (excepting to the Bustleton churches above mentioned) all legacies or bequests to or for religious, benevolent or charitable institutions shall be suspended and invested and held in trust by my executors for ten years after my decease, but without allowing interest for the time, to the said institutions and for the following uses, intents and trusts, namely, to pay the income thereof semiannually, in semiannual portions, to Louise Wernle (now Louise Wernle Wright), and ten years after the settlement of my estate or after her decease, if she deceases in less than ten years after the settlement of my estate, then to divide the principal (five hundred dollars each) to each of the aforesaid religious, benevolent and charitable institutions.

Item Seventh.—And furthermore, when either or any of the following named persons decease, namely, George D. Stewart, Jesse M. Cook, Caroline M. Quick, or Emma K. Green          decease, then the principal for small annuities, if any, which I may have bequeathed to or for them or any of them shall, as each one of them deceases, be added to (or in due time be distributed in the same way as) the benevolent fund provided in the foregoing item, of which the annual income is to be paid to the aforesaid Louise Wernle Wright during ten years after the settlement of my estate. The principal of said benevolent fund shall be distributed then or immediately after her decease, if she dies earlier than that.

Item Eighth.—The legacies to or in trust for Frances E. Koons, and for Josephine W. K. Rulon, and for Mamie L. Koons, and for Robert J. W. Koons, and for Louise Wernle Wright (excepting her interest in the benevolent fund hereinabove mentioned), and for Mary R. Heritage, shall first be set apart in full.   But if the estate should not be sufficient to provide these in full, then they shall be established and provided pro rata next the principals which I may have set apart for smaller annuities to George D. Stewart, Jesse M. Cook, Caroline M. Quick, and E. K. Green .          shall next be provided for; next the legacies ultimately for religious, benevolent and charitable institutions, but for Louise Wernle Wright for the next ten years after my decease shall next be provided for.

Item Ninth.—All notes of hand and debts to me dated or arising prior to the date of this codicil, due to me from Frances E. Koons, Josephine W. K. Rulon, Mamie L. Koons, and Robert J. W. Koons, or either of them, are not to be counted as assets, and should be free from tax as much as the law will allow, and are intended to be released.   But my executors are to retain them alive and valid in law, as memoranda or vouchers, until after my estate has been fully settled; and as set-offs against any claims that may at any time be made against me, by any of them, or by the representatives of any of them.   (1) Page 1, line 8, after "Bustleton" interline "Phila."   (2) Page 1, line 18, interline "be" after "shall."

    Executed as a Codicil to the Will of Robert J. Wright, at Bustleton, Phila., Sept. 4, A. D. 1889.

### SIXTH CODICIL.

September 11, 1889.

I revoke the bequest for Louisa Livinsetter, she being deceased.   I revoke the bequests for the American Christian Convention and for the Colored Theological Insti-

tute or School, at Franklin, North Carolina, and for the Christian Biblical Institute, of Stanfordville, New York.

The funds hitherto provided for the foregoing bequests shall go into my general estate to fulfill my Will and Codicil in other respects. The foregoing is another codicil.

Executed at Bustleton, Phila., Pa., September 11, 1889. On fifth line omit "and."

### SEVENTH CODICIL.

January 31, 1890.

This is another codicil:

It is executed in duplicate, so that only one copy is to stand. I hereby order and direct that an additional ten thousand dollars shall be added to the trust for Louisa Wernle Wright and for her issue; the income thereof to be paid to them during life, as provided in Will and former Codicils. But Louisa W. Wright is to have the power to will and bequeath said ten thousand dollars in case of her death without issue.

2. I order and direct that ten thousand dollars be added to the trust for Frances E. Koons and her issue; and, in like terms, as expressed in Codicils for them, income only to be used during their lives; but principal is ultimately to go to the Koons issue, as directed formerly.

This document is executed at Bustleton, Philadelphia, Pa., January 31, in the year of our Lord one thousand eight hundred and ninety, being a Codicil to the Will of Robert J. Wright.

### EIGHTH CODICIL.

No. 1, February 22, 1890. Duplicate.

(Signed) R. J. WRIGHT.

This is another codicil:

I hereby revoke from that large trust for several parties in my Will another one-fifteenth for Mary R. Heri-

tage, so that there only shall remain of and in that trust one-fifteenth interest for her and her issue, and the one-fifteenth hereby revoked from her interest I hereby give and bequeath to my executors in trust for Frances E. Koons and her issue as long as the law will allow, and as provided in other plans for the children of Frances E. Koons and their issue; and when the required time or circumstances arrive the principal shall be divided as directed in said trust.

Memorandum: Interline "children" on 8th line, and interline "arrive" in tenth line. Interline "of several persons" in second line. Interline "shall" on third line. Executed February 22, A. D. 1890, at Philadelphia, the word "fifteenth" is interlined over erasure on lines two and four and five. R. J. W.

### NINTH CODICIL.

No. 2, February 22, 1890. R. J. W.

The following is another codicil:

I hereby subject my Will and codicils to the following condition: I declare and ordain that all specific bequests to or in trust for my sister or any of her three children, or to or for any of her issue, whenever the total of such bequests and amounts shall be in excess of the amount agreed upon between us, and in excess of the total of all other bequests to and for all other persons besides her and her children and issue, then all such excess shall be on the condition that neither she, Frances E. Koons, nor either of her children, nor either of their issue, or the representatives, or the representatives of any or either of them, shall bring any suit or claim of any kind whatever against me or my estate, except for the amounts provided in my Will and codicils for them, and sufficient to fulfill the agreements on this subject made between them and me, in the sense that I and my executors and the other legatees not Koon's relations would naturally claim to be the meaning and sense of the words "sufficient" to fulfil, "and of fulfilment."

Executed as a codicil to the Will of the subscriber, in his presence and of each other, Bustleton, Philadelphia, February twenty-second, in the year eighteen hundred and ninety.

Memorandums: Line two, "and" is in a blot. Line three, from bottom, interline "me or." (Signed) R. J. W. Three from top, interline "specific."

(Signed) ROBERT J. WRIGHT.

Line three from bottom, interline "me or."

And if either of the aforesaid do violate the foregoing condition, then one-half of the sums thereby forfeited shall go into the trust for Frances E. Koons, and the other half into the trust for Louise Wernle Wright, and their respective issues, as in and for the other trusts provided for them respectively. (Morning (Morning,) Philadelphia, February 27, 1890. Interline "Wright" after Wernle. Interline "in and."

(Signed) ROBERT J. WRIGHT.

### TENTH CODICIL.

February 27, 1890 (afternoon).

(Signed) R. J. WRIGHT.

The following is another codicil:

If the bequests to and in trust for Frances E. Koons and her children, and their issue, are not a total of specific ones, sufficient to insure the carrying out and completion of my Will, I then revoke the bequests to or in trust for George D. Stewart, Caroline M. Quick and Jesse M. Cook; or if only part of them is sufficient to be revoked, I revoke them in the order herein named, and so much of them as may be necessary to carry out the other conditions and provisions. I believe the bequest hereinabove mentioned as to be revoked are only one thousand or two thousand dollars each, exact amount not now remembered. And furthermore, if the total of all other bequests than Koons shall still be greater than is allowable to carry out the Will, I direct that all my

177, (1917).] Statement of Facts—Assignment of Error.

charitable and religious bequests shall be reduced pro rata towards bringing the total to or for others than Koons down to the necessary sum. And, last of all, this reduction shall, if needed, include the sums in the benevolent fund, intended to go to or for Louise Wernle Wright for ten years (pro rata to those in that benevolent fund), I mean religious, benevolent and charitable institutions and chartered ones.

Executed as a codicil to the last Will and Testament of the subscriber, at Bustleton, Philadelphia, in the year of our Lord eighteen hundred and ninety, February twenty-seventh, in the afternoon.

### ELEVENTH CODICIL.

May 3, 1890.	(Signed) R. J. Wright.

The following is another codicil:

I Will and direct that all monies or values due to me from my sister, F. E. Koons, or from any or either of her children or issue, shall not be released, but shall be deducted from amounts or values bequeathed to them; and whatever, by this arrangement, any of them gets less than they would otherwise have received, shall be made up to them in the final distributions as residuary legatees (but without charging interest to each other of the aforesaid persons for the amounts affected by this codicil). And all my trusts for my aforesaid relatives are hereby made subject to these conditions, and all codicils heretofore made, inconsistent herewith, are hereby revoked.

Executed in duplicate, as usual, as a codicil to the last Will and Testament of the subscriber, R. J. Wright, at Philadelphia, this third day of May, one thousand eight hundred and ninety.

*Error assigned* was decree dismissing exceptions to adjudication.

*Alex. Simpson, Jr.,* with him *Thomas Stokes* and *John*

*Cadwalader, Jr.,* for appellants.—It is a well settled rule that a clear gift given by a will is not to be destroyed by a codicil unless it appears with at least equal clearness that such is the intention. Moreover, there is no more right to infer an intent not expressed in this case than in any other. All we can do is to find out what testator's language is, and to what it fairly applies, and then the construction thereof follows irrespective of any supposed unexpressed intention: Hancock's App., 112 Pa. 532; Howe's App., 126 Pa. 233; Schmidth's Est., 183 Pa. 641; Corr's Est., 202 Pa. 391; Shaner v. Wilson, 207 Pa. 550; Stevenson v. Grant, 2 Wharton 278; Sigel's Est., 213 Pa. 14; Cassidy's Est., 224 Pa. 199.

*C. C. Norris, Jr.,* of *Hepburn, Dechert & Norris,* with him *Murdock Kendrick,* for appellees.—But two principles of law need be invoked in the construction of the will and both of them are cardinal principles of construction, namely, that the intention of the testator is to be gathered from the will as a whole and secondly, that where there is a doubt as to the intention of the testator, that construction will be adopted which favors the heir: Schott's Est., 78 Pa. 40; Nebinger's Est., 185 Pa. 399.

OPINION BY PORTER, J., October 15, 1917:

The testator executed his will on June 28, 1886, and died on June 7, 1890, having in the meantime executed twelve codicils, several of which bear upon the rights of the parties to the present controversy, and it is not surprising that the complicated series of codicils has led to litigation. The will and its voluminous codicils will appear in the report of the case and it is not necessary that we recite them at length in this opinion. This is the fifth account of the trustee of the bequest of $150,000 in the ninth clause of the will, subsequently modified by sundry codicils, under which the parties entitled to the income, during life, were Josephine W. Rulon, one-fifth; Mary L. Kennedy, formerly Koons, one-fifth; Robert J. W.

Koons, one-fifth; Louise Wernle Werner, one-fifth; Mary
R. Shaw Heritage, one-fifteenth, and Frances E. Koons,
two-fifteenths. Under the provisions of the trust, as
originally created by the ninth paragraph of the will,
the one-fifth interest of Louise Wernle Werner in the
fund was subject to the following limitations, viz: one-
fifth of the net income was to be paid to her quarterly
during her life, "and issue shall take the share of its
deceased parent; but in case of any of the above dying
without leaving issue, or without issue living to the age
of twenty-one years, then such a one's full one-fifth of
the principal shall be paid over absolutely and divided
equally among the several religious and benevolent in-
stitutions hereinafter named or intended so to be; but
when either of said five has died and all of his or her
said issue living has reached said full twenty-one years
of age, then the entire one-fifth of the principal which
was set over for such a one, shall be paid over to, or
for, such issue or their representatives absolutely and
free from all trusts whatever." Louise Wernle Werner
died without leaving issue and this account was there-
upon filed in order that the court might determine the
distribution of the one-fifth of the fund of which she had
during life received the income. The religious and
benevolent institutions, of which this appellant is one,
claim the one-fifth of the fund under the bequest of the
remainder, contingent upon the death of Louise Wernle
Werner without issue, under the ninth clause of the will.
The appellee asserted that the bequest of that contingent
remainder had been revoked by the codicils of the will
hereinafter referred to. The court below sustained the
contention of the appellee and awarded the fund to the
appellee as trustee under the trust created residuary
legatee by the first codicil, and from that decree we have
this appeal.

It is necessary here to briefly refer to those provisions
of the will, the subsequent treatment of which in the
various codicils, may afford light in ascertaining the in-

tention of the testator with regard to the ultimate disposition of the fund with which we are now dealing. The sixth clause of the will bequeathed an annuity of $80.00 to each of four persons, and the fourth paragraph of the first codicil directed that a principal of $1,250 be set aside for each $40 of said annuities, respectively, to secure payment of the same. The remainder in the principal sum thus set aside to secure the annuities was not expressly bequeathed to any one and would have fallen into the residuary estate, but by item seven of the fifth codicil it was expressly provided that the income of that fund should be paid to Louise Wernle Werner during the period of ten years and at the expiration of that period, or upon her death if she died prior thereto, the principal should be paid to the religious and benevolent institutions with which we are now dealing. The seventh clause of the will bequeathed the sum of $40,000 to the trustee, the income to be paid to Frances E. Koons during her life, and after her death the principal to be paid and divided equally among the same religious and benevolent institutions. This trust fund and the ultimate disposition of the principal thereof was dealt with in the fourth codicil of the will in the manner to which we shall hereafter refer. The ninth paragraph of the will we have above referred to; that paragraph as written in the will bequeathed the sum of $150,000 in trust, one-fifth of the income thereof to be paid to Josephine W. Rulon, one-fifth to Mary L. Koons, one-fifth to Robert J. W. Koons, one-fifth to Mary R. Shaw Heritage, and one-fifth to Louise Wernle (who subsequently married Bernard Werner), during their respective lives, with remainder to their respective issue living until twenty-one years of age; upon the death of any of said parties without issue the one-fifth share of the person so dying should be paid to the religious and benevolent institutions and, finally the testator bequeathed all his residuary estate to the said religious and benevolent institutions. It is true that in the seventh and ninth para-

graphs of his will the testator did not write out at length
the names of the many charities which he intended to
become the objects of his bounty; he, in those para-
graphs, merely identified such societies as "the several
religious and benevolent institutions hereinafter named
or intended so to be." There can, however, under the
wording of the will, be no doubt that the religious and
benevolent institutions which he referred to in the sev-
enth and ninth paragraphs of the will were the same
institutions, the names of which he wrote out at length
in the residuary clause of the will. The printing of the
names of those institutions occupies an entire page in
the paper book and it was not necessary that the testa-
tor should add to the bulk of his will by repeating again
and again the names of the institutions which his will
as written so clearly identified. The fact that the names
of the institutions were not repeated in the seventh and
ninth paragraphs of the will did not change the char-
acter of the interests which passed to the institutions
under those paragraphs. The benevolent institutions
took a vested remainder in the principal of the trust
fund of $40,000, of which Frances E. Koons was to re-
ceive the income during life, under the seventh para-
graph of the will: under the ninth paragraph of the will
they took an estate in remainder in each one-fifth of that
trust fund, after the death of the life tenant, contingent
upon the death of that tenant without leaving issue. As
to these estates in remainder it mattered not whether
any residuary estate remained after payment of the gen-
eral legacies and provision for the various trust funds.
We have then bequests to the charities of three distinct
interests, a vested remainder in one fund, a contingent
remainder in another fund, to take effect after the termi-
nation of life estates, and an absolute devise of the re-
siduary estate to take effect in possession immediately
upon the distribution of the testator's estate.

When we come to consider the effect of the codicils
upon these several bequests to the charities contained in

the will it is well to bear in mind the fundamental distinction between the nature of a codicil and a later will. The later will works essentially a revocation, while the codicil is a confirmation except as to the express alterations which it may contain. The general result of the authorities on the subject is, that notwithstanding a codicil, the provisions of the will are to stand, unless in order to effect the purposes of the codicil, it is absolutely necessary that the provisions of the will shall give way: Spang v. Hill, 2 Woodward 45. "Where it is possible to construe the codicil so as to give effect to all the provisions of the will, it certainly should be done": Sigel's Est., 213 Pa. 14; Cassidy's Est., 224 Pa. 199; Stevenson v. Grant, 2 Wharton 278. Let us now take up in order the codicils which have any bearing upon the question presented.

The provisions of the first codicil which are here material are as follows: "As soon as the totals given to the various charities, constituted residuary legatees in will June 28, 1886, shall sum up the total of $1,000 to each of said institutions entitled then to an equal share then no more shall be paid to those institutions, unless as hereinafter mentioned: but I hereby direct my executor and trustee to set apart and constitute a trust as residuary legatee for everything not otherwise provided for, nevertheless in trust for the benefit of my sister Frances E. Koons and her issue." The codicil then directs that one-half of the income be paid to Frances E. Koons semiannually and one-sixth of the income to each of her three children, and after her death the income to be paid to her three children or their issue in the same way, "as long as the law will allow," issue in all cases taking parent's share, with cross remainders, "but in case Frances E. Koons and her three children and all her and their issue shall be deceased before becoming entitled to this property and before the legal time for the entail has closed, then the property now spoken of is to be paid to the various charitable institutions as

mentioned and provided for in will of June 28, 1886."
This codicil further provides that the sum of $10,000
shall be set apart in trust for Louise Wernle, the income
to be paid to her during life, and in case of her marriage
she to receive $4,000 of the principal, and the remainder
to be paid to her children.   This codicil in express terms
refers to the charities as residuary legatees.   It does not
give to the charities a general pecuniary legacy of
$1,000, it manifestly refers to a fund which was uncer-
tain in amount and which might or might not be suffi-
cient to pay the charities the sum of $1,000 each.   If
that had been the only codicil of the will, it would then
seem to be clear that the charities could not have as-
serted the right to receive the sum of $1,000 each as a
definite pecuniary legacy.   The charities would have
had to wait until everything otherwise provided for in
the will had been set apart before they would have been
entitled to anything.   It seems, further, to be clear that
"the property now spoken of" to which the codicil refers
was property which was to yield to the trust fund, "con-
stituted a residuary legatee," a present income which
was to be paid to the beneficiaries under it semian-
nually.   We cannot, therefore, say that in order to ef-
fect the purpose of this codicil it is necessary that the
provisions of the ninth paragraph of the will, giving to
the benevolent institutions a contingent remainder in
the fund of which Louise Wernle Werner received the
income, should be stricken down.   The effect of that
codicil was to give to the benevolent institutions the
right to presently receive, upon the death of the testa-
tor, the sum of $1,000 in case the residuary estate was
sufficient to pay that amount to each of said institutions,
and in case there was a surplus after paying that
amount then all the property not otherwise provided for
in the will was to go to the trust, which was constituted
the residuary legatee.   This codicil did not revoke the be-
quest to the charities of the vested remainder under the
seventh clause of the will nor did it revoke the contingent

remainder which the institutions took under the ninth clause of the will. That the testator so understood the matter is demonstrated by the fourth codicil, which was executed June 25, 1889.

In the fourth codicil the testator first reduced the principal of the trust fund, of which Frances E. Koons was to receive the income during life, as provided in the seventh paragraph of the will, from $40,000 to $30,000, and, after stating that the principal of the fund was by his will directed to be paid to various benevolent and religious institutions after her death, expressly provides that the net income, after her decease, be divided equally between her children, and after the decease of either of the three to the issue of the person deceased, with cross remainders, and after the children surviving shall all have attained the age of twenty-one years the principal be divided equally between them. This effectually and expressly revokes the bequest to the institutions of the vested remainder in the $40,000 trust fund provided for in the seventh item of the will. It clearly indicates that the testator had thought down until that time that his will gave to the charities a vested remainder in that trust fund. If he had intended, by the first codicil, to revoke the bequest of that vested remainder, why did he deem it necessary to revoke it over again? The codicil does not, however, stop there, it expressly and distinctly deals with the contingent remainder, given to the institutions, under the ninth clause of the will, upon the death of the life tenants without leaving issue. The language is significant: "I direct that the various sums of money directed in article nine of the aforesaid will to be held in trust for the equal benefit of niece Josephine W. Rulon, niece Mary L. Koons, and nephew Robert J. W. Koons, and for their issue, shall be divided, both income and principal, in the same manner and on the same principles as are herein above directed for the disposal of the aforesaid trust for Frances E. Koons after her decease. And furthermore, all the reversion-

ary rights given to institutions in the aforesaid will, reversionary rights to things and sums therein bequeathed to or in trust for Frances E. Koons, or her issue, are hereby revoked, as it is my intention that as long as there is any issue surviving of Frances E. Koons, or her offspring, everything that I bequeathed in the will of June 28, 1886, and in this codicil to her or them shall go no otherwise than to her issue so long as the law will allow." This certainly makes it very clear that the testator did not believe that he had by the first codicil revoked what he calls "the reversionary interests given to institutions" in the will, not even in sums therein bequeathed to Frances E. Koons or her three children named. When, in this fourth codicil, he expressly deals with those specific "reversionary rights," which passed under the ninth article of the will, he confines the revocation to the reversionary rights in things or sums bequeathed to Frances E. Koons or her children. This gives rise to a clear implication that it was not his intention to revoke the contingent interest which he had given to the religious and benevolent institutions in the one-fifth of the $150,000 trust of which Louise Wernle Werner was to receive the income during life. The testator was not, however, disposed to leave this a mere implication, as the following paragraph of this codicil discloses.

That paragraph begins by directing that article nine of the will, which constituted the $150,000 trust, be altered so that Mary R. Shaw Heritage and her issue shall have an interest of only two-fifteenths (instead of one-fifth) in the trust constituted in said article nine and that Frances E. Koons and her issue shall have an interest of one-fifteenth in said trust; thus taking from Mary R. Shaw Heritage and her issue a one-fifteenth interest in the trust fund and giving it to Frances E. Koons and her issue. The paragraph then proceeds: "But the interest of all the other parties constituted by the trust in article nine of my will are to remain un-

changed by this clause, as this clause only affects Mary
R. Shaw Heritage and Frances E. Koons and their re-
spective issue." This clearly indicates that it was the
intention of the testator that article nine of the will
should be changed only to the extent which he specifi-
cally provided that it should be changed. The testator
in this paragraph then deals with the first codicil, of
January 20, 1888: "I hereby alter codicil of January
20, 1888, as follows: I direct when the amount paid to
each of the various religious and benevolent institutions
(mentioned in codicil of January 20, 1888, or referred
to there or mentioned in will of June 28, 1886) shall
amount to $800 each, then no more shall be paid to
them, but the residuary estate not otherwise bequeathed
or devised shall then be held in trust for or paid to
Frances E. Koons and her issue, as provided in codicil
of January 20, 1888. Provided, however, that this limi-
tation shall not apply to legacies coming to institutions
after the decease of legatees, or their issue, other than
Frances E. Koons and her issue, and when it is specifi-
cally provided that in case of the death of said legatees
(other than Frances E. Koons or her issue) their share
shall then go to the religious or benevolent institutions."
This seems to establish that when the testator said that
only a limited amount should be paid to each of the vari-
ous religious and benevolent institutions, $1,000 in the
first codicil and $800 in the fourth, and "then no more
shall be paid to them," which quoted words he uses in
each of the codicils, he intended to deal only with the
amount which they were to receive out of the residuary
estate, and did not intend to revoke the bequest to the
institutions of the contingent remainder in the principal
of the one-fifth of the $150,000 fund, the income of which
was bequeathed to Louise Wernle Werner during life.

We now come to the fifth codicil, dated September 4,
1889. The first item in that codicil provides: "I hereby
direct that only $500 each shall be given to each of the
various religious, benevolent and charitable institutions

made legatees of larger amounts in my will and codicils, except that the legacy to the Bustleton Methodist Episcopal Church......shall be $1,000.00, and I bequeath to Saint Luke's Protestant Episcopal Church...... $500.00." This manifestly refers to legacies given directly to the charitable institutions, and, in the absence of other provisions, payable upon the death of the testator. The sixth item of this codicil contains the following provisions: "I direct that (excepting to the Bustleton Churches above mentioned) all legacies or bequests to or for religious, benevolent or charitable institutions shall be suspended and invested and held in trust by my executors for ten years after my decease,......for the following uses, intents and trusts, namely, to pay the income thereof semi-annually, to Louise Wernle, and ten years after the settlement of my estate or after her decease, if she decease in less than ten years after the settlement of my estate, then to divide the principal (five hundred dollars each) to each of the aforesaid religious, benevolent and charitable institutions." This makes it clear that the legacies to the charities, with which the testator is now dealing, are legacies which, in the absence of the provisions of this item would have become payable upon his decease, or the settlement of his estate. The settlement of his estate which he refers to is manifestly the primary distribution of his estate and the allotment of it to the various trusts which he created, and was not intended to disturb the ultimate distribution of the principal of the various trust funds for which he had provided. That it was not his intention to absolutely limit the amount which each of the charities should receive to the sum of $500, from all sources, is indicated by the seventh item of this codicil, in which he directs that the principal of the fund set aside to provide for the payment of the annuities bequeathed to several persons by the sixth item of the will shall, upon the death of the annuitants be added to the trust fund provided for in the sixth item of this codicil, which the tes-

tator calls "the benevolent fund," of which the income was to be paid to Louise Wernle Werner for ten years, and the principal at the expiration of that time, or upon her death if she died within that period, was to be paid to the religious and benevolent institutions. No disposition of the principal of that fund had been made in the will or any prior codicil. The eighth item of this codicil provides that the legacies to or in trust for Frances E. Koons, Josephine W. Rulon, Mary L. Koons, Robert J. W. Koons, Louise Wernle Werner (excepting her interest in the benevolent fund hereinbefore mentioned), and for Mary R. Shaw Heritage shall first be set apart in full. "But if the estate shall not be sufficient to pay these in full, then they shall be established and provided pro rata; next the principals which I have set apart for smaller annuities (naming the annuitants) shall be provided for; next the legacies ultimately for religious, benevolent and charitable institutions, but for Louise Wernle Wright (subsequently Werner) for the next ten years after my decease, shall be provided for."

This provision establishes beyond any doubt that it was the intention of the testator that the "benevolent fund," out of which the religious and charitable institutions were each to receive $500 and the income of which Louise Wernle Werner was to receive for ten years, was to be provided for immediately upon the settlement of the estate, but it was to receive nothing until after funds had been set apart to fully establish the various trust funds provided for in the will, including that in favor of Louise Wernle Werner and others, the terms of which were defined by the ninth article of the will. This legacy of $500 to each of the religious and benevolent institutions was not to go into the "benevolent fund" until all other legacies given by the will had been provided for; it was in its nature a bequest of residue. We find in this codicil nothing which, in the light of the authorities hereinbefore referred to, would warrant us in holding that it clearly or by necessary implication,

discloses an intention upon the part of the testator to strike down the contingent remainder in the principal of the fund of which Louise Wernle Werner received the income during her life, under the trust created by the ninth article of the will. The codicil is careful to say that the legacies to or in trust for the parties who were the beneficiaries under that particular trust shall have precedence in the distribution of the estate, but it does not intimate an intention to make any change in the conditions or limitations of the trust, either as to the income or the ultimate disposition of the principal.

The eighth codicil is the only one remaining which refers to the disposition of the trust fund of $150,000, created by the ninth article of the will. "I hereby revoke from that large trust for several parties in my will another one-fifteenth from Mary R. Shaw Heritage, so that there shall only remain of and in that trust one-fifteenth interest for her and her issue, and the one-fifteenth hereby revoked from her interest I hereby give and bequeath to my executors in trust for Frances E. Koons and her issue as long as the law will allow, and as provided in other plans for the children of Frances E. Koons and their issue; and when the required time or circumstances arrive the principal shall be divided as directed in said trust." There is here nothing whatever indicating an intention to revoke the bequest to the religious and benevolent institutions of the contingent remainder in the principal of the sum of which Louise Wernle Werner was to receive the income during life. It seems rather to indicate that when the required time or circumstances arrive the principal of the trust fund is to be divided as directed by the will, although it may be that those words should be held to refer to the one-fifteenth interest in that fund which is by this codicil transferred from Mary R. Shaw Heritage to Frances E. Koons and her issue.

We are of opinion, after mature consideration of this will and its complex combination of codicils that the be-

quest to the religious and benevolent institutions of the contingent remainder in the principal of that one-fifth of the trust fund provided for by the ninth article of the will, of which Louise Wernle Werner received the income during her life, was not revoked by any of the codicils, and that this appellant is entitled to receive its proportionate share of that principal.    It is important here to observe that the religious, benevolent and charitable institutions to which legacies are given by the various codicils of the will, but which were not named in the original instrument did not become entitled to any interest in the fund with which we are now dealing.

The decree is reversed and the record is remitted to the court below with direction to distribute to the appellant its proportionate share of the fund involved, as indicated by this opinion.    The costs of this appeal to be paid by appellees.